IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JUL 2 0 2006

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| CATHY HUEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3835 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 9) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 10, 11).  The court has considered the motions, all relevant filings, the administrative record, and the applicable law.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED.**

### I.  Case Background

**A.  Procedural History**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability benefits under Title XVI

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket entry Nos. 7, 12-13.

of the Social Security Act ("the Act").

Plaintiff filed for disability benefits on November 14, 2002, claiming an onset date of July 1, 2002, due to rheumatoid arthritis ("RA") and fibromyalgia.[2]   Plaintiff's application was denied initially and upon reconsideration.[3]   Plaintiff requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[4]   The ALJ granted Plaintiff's request and conducted a hearing on June 2, 2004, in Houston, Texas, at which Plaintiff and a vocational expert testified.[5]

On June 18, 2004, the ALJ found that Plaintiff was not under a "disability" (as defined in the Act), at any time through the date of the ALJ decision because Plaintiff could do her past relevant work.[6]   Plaintiff subsequently requested a review of that decision by the Appeals Council of the Social Security Administration.[7]   On August 26, 2005, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final agency decision.[8]   20 C.F.R. §§ 404.981, 416.1581.   Plaintiff then timely filed for judicial review in this court.

---

[2]   Transcript of the Administrative Proceedings ("Tr") Tr. 46, 47, 51.

[3]   Tr. 31-33.

[4]   Tr. 43.

[5]   Tr. 14.

[6]   Tr. 20.

[7]   Tr. 9.

[8]   Tr. 4-6.

**B.  Factual History**

   1.  <u>Plaintiff's age, education, and work experience</u>

    Plaintiff was born on June 2, 1954,[9] and thus, was fifty years old at the time the ALJ rendered his decision on June 18, 2004. Plaintiff possessed a tenth-grade education and past relevant work experience as a hairdresser, bartender, and banquet server.[10]

   2.  <u>Plaintiff's testimony</u>

    In her initial Application for Supplemental Security Income Benefits (the "Application"), Plaintiff stated she was limited in her ability to work due to fibromyalgia and RA.  She stated that these illnesses prevented her from being able to "bend [her] knees, . . . sit low to [the] ground, . . . stand without help, . . . [or] use [both her] hands."[11]  She reported that these conditions first started to bother her on June 23, 2002, and she became unable to work because of these conditions on August 29, 2002.[12]  Plaintiff's Application showed that she worked after the date her conditions first bothered her.[13]  However, due to her condition she worked fewer hours, changed her job duties, and had to make job-related

---

[9]    Tr. 31.

[10]   Tr. 15.

[11]   Tr. 51.

[12]   <u>Id.</u>

[13]   <u>Id.</u>

3

changes.[14]  When asked why she stopped working on August 29, 2002, she asserted it was because she could not predict when she would have a "good day or bad [day]," she was unable to "commit to a set schedule" due to "constant pain" and she could not "walk, bend, crouch or . . . use [her] wrists."[15]

After her claim was denied at the initial level, Plaintiff filed a Request For Reconsideration.[16]  Plaintiff asserted that the examination for the initial determination was not thorough.  She also complained that there was no discussion regarding her medications.  Further, the examination was done in ten minutes with an examiner who was not a RA physician.[17]

When her claim was denied again, Plaintiff appointed an attorney representative and filed a Request For Hearing By Administrative Law Judge, stating her "condition [had] worsened and [Plaintiff] did not feel like the examiner gave [her] enough time on [her] examination to determine [her] condition, and [the examiner] did not look at [her] records."[18]

At the hearing with the ALJ, Plaintiff described the course of

---

[14]   Id.  Plaintiff explained these limitations by stating she could not stand up as long as the pain remained in her knees and calves.  Also she could not lift heavy objects because of her wrists, and she could not be depended on to make and keep a work schedule.

[15]   Id.

[16]   Tr. 39.

[17]   Id.

[18]   Tr. 43.

her illness.   In July 2002, Plaintiff's "big toe" began to swell
and cause Plaintiff pain.[19]   She conducted some research and
believed the condition to be attributed to "gout."[20]  After the pain
moved to the top part of her body, she realized it was not gout and
decided to see her treating physician, Sharon O'Day, D.O., ("Dr.
O'Day").[21]  Tests performed by Dr. O'Day in August 2002, determined
that Plaintiff suffered from RA.[22]

     At the administrative hearing, she testified that her pain
migrated around her body.   When she was first diagnosed with RA,
the pain was in both of her knees and her knees were constantly
hurting.[23]   Plaintiff's attorney asked about the current condition
of her knees.[24]   She replied, "they are not as swollen because they
gave me a Cortisone shot April 22nd, so it made the swelling go
down."[25]   When describing the condition of her knees, Plaintiff
stated she could not "sit down, . . . get on the floor, . . .
squat, . . . and that [she] basically had 'no knees.'"[26]

---

[19]    Tr. 237.

[20]    Id.

[21]    Id.

[22]    Tr. 238.

[23]    Tr. 240.

[24]    Id.

[25]    Tr. 241.

[26]    Id.

With regard to her daily activities, Plaintiff testified, "Some days I have good days and [some] days I have really bad days."[27]  Plaintiff stated that on a bad day she would do nothing and "If it is a good day, then I try to catch up on things that . . . I haven't done."[28]  Plaintiff asserted she was able to drive, but her ability to drive was limited to "once every two weeks."[29]

Plaintiff also testified that the medication prescribed by Dr. O'Day, was the same as that prescribed by Dr. Bakke, a University of Texas Medical Branch ("UTMB") RA specialist.[30]  When Plaintiff was asked how often she took her medication, she replied that on a good day she could "stretch it to like six to eight hours.  On a bad [day], sometimes only three to four [hours]."[31]

During the ALJ's examination of Plaintiff, he asked whether or not she suffered from hepatitis C.[32]  Plaintiff acknowledged that she did in fact have hepatitis C, but that "it was in remission" and she needed to be checked every six months.[33]

3.  Plaintiff's medical record

---

[27]  Tr. 242.

[28]  Tr. 244.

[29]  Tr. 246.

[30]  Tr. 245-246.

[31]  Tr. 243.

[32]  Tr. 247.

[33]  Id.

Plaintiff's medical record wholly supports the findings that Plaintiff is afflicted by RA, hepatitis C, and osteoarthritis. On August 29, 2002, Plaintiff reported to the Fort Bend Family Health Center ("Ft. Bend") with complaints of pain in her right toe and right knee which had been present for the past month.[34] The physician prescribed Naproxen and ordered x-rays of Plaintiff's right knee.[35]

The x-ray of Plaintiff's right knee showed "normal alignment without fractures or dislocations."[36]   The x-ray also evidenced "three compartment small degenerative osteophytes . . . with mild narrowing of the media tibiofemoral joint space . . . [and] small joint effusion."[37]   The physician opined that Plaintiff had "mild three compartment osteoarthritis."[38]

On September 18, 2002, Plaintiff returned to Ft. Bend complaining of continued pain in her joints.  Plaintiff also stated that Naproxen was not helping but Darvocet, prescribed on September 4, 2002, had helped "some."[39]   After several previous diagnoses, September 18, 2002, is the first date that RA was given as an

---

[34]    Tr. 122.

[35]    Tr. 123.

[36]    Id.

[37]    Id.

[38]    Id.

[39]    Tr. 113, 116.

assessment by Plaintiff's treating clinic. Plaintiff was later started on Methotrexate and Prednisone on November 5, 2002.[40] January 10, 2003, was the first day where RA was the sole diagnosis given for Plaintiff's ailments.[41] On that day, Dr. O'Day noted that Prednisone "miraculously relieved pain," but when Plaintiff used Methotrexate, the pain returned after a couple of days.[42]

An x-ray of Plaintiff's left knee performed September 4, 2002, revealed mild degenerative joint disease and moderate joint effusion.[43] A Magnetic Resonance Imaging Scan ("MRI") of Plaintiff's right hand taken on February 12, 2003, suggested "mild inflammatory osteoarthritis of the right hand and wrist, . . . periarticular demineralization of the bones, mild degenerative narrowing of PIP and DIP joints, . . . [and] no significant osteophyte formation, cortical erosions, or cyst formation."[44]

At the request of Texas Disability Rehabilitation Services, Priti S. Jadav, M.D., ("Dr. Jadav") performed a consultative examination on February 12, 2003.[45] In the report of the examination, Dr. Jadav gave a detailed "History of Present

---

[40] Tr. 110.

[41] Tr. 100.

[42] Id.

[43] Tr. 160.

[44] Tr. 148.

[45] Tr. 142-147.

Illness," based on Plaintiff's self-report. According to the history, Plaintiff denied "any weakness or numbness in any part of the body."[46] Plaintiff stated she could "sit for three to four hours, stand for two hours, . . . move around for three hours, . . . lift, carry and handle about two pounds of weight, . . . [and] drive by herself."[47]

Under the "Physical Examination" portion of the report, Dr. Jadav noted that Plaintiff had "good range of motion of the dorsolumbar spine and she could bend down and touch her fingertips" [to the floor].[48] In her extremities, no edema was found, there was slight swelling in her right wrist, good range of motion in her elbow, and, other than her knees, there was good range of motion in all her other joints.[49] He also stated Plaintiff could "make a good grip, drive, hold things by herself and button her clothes."[50] Dr. Jadav commented that Plaintiff [was] "getting up and down from the chair every five minutes [and] . . . she was very active."[51] In his assessment, Dr. Jadav recommended ruling out RA versus connective tissue disorder and opined Plaintiff suffered from osteoarthritis

---

46    Id.

47    Id.

48    Id.

49    Id.

50    Id.

51    Tr. 145.

9

at multiple sites.[52]

On February 28, 2003, Agency physician Dr. Jimmy Breazeale, M.D., ("Dr. Breazeale") filled out a Residual Functional Capacity Assessment ("RFCA") after reviewing all of Plaintiff's medical records.[53]  In the RFCA, Dr. Breazeale opined that Plaintiff could occasionally lift and/or carry up to fifty pounds and frequently lift and/or carry up to twenty five pounds.[54]  He also found Plaintiff could stand and/or walk for about six hours in an eight-hour workday, sit for six hours, and she was not limited in her ability to push and/or pull.[55]

Plaintiff's treating physician, Dr. O'Day, also filled out a RFCA dated May 7, 2004.[56]  In Dr. O'Day's RFCA, she opined that, in a competitive work situation, Plaintiff could walk less than one city block on a good day, could continuously sit and stand for no more than fifteen minutes, could sit, stand and/or walk less than two hours in an eight-hour work day, and she could occasionally lift less than ten pounds.[57]

Dr. O'Day also opined that Plaintiff could not work, stoop or

---

[52]     Tr. 147.

[53]     Tr. 149-156.

[54]     Id.

[55]     Id.

[56]     Tr. 165-168.

[57]     Id.

crouch, needed the assistance of a cane while engaging in occasional standing/walking, and could not use her hands, fingers or arms at all in a competitive work situation.[58]   Further, Dr. O'Day found that Plaintiff had good days and bad days and that she was likely to be absent from work more than four times every month.[59]   Previously, on April 25, 2003, Dr. O'Day filled out a "Medical Release/Physician's Statement."   It noted that Plaintiff was permanently unable to work due to a physical disabling factor.[60]

On July 31, 2003, Plaintiff visited UTMB in Galveston, Texas, for more tests.   In a letter dated August 5, 2003, from a physician assistant in the Division of Rheumatology, it was confirmed that Plaintiff had "active rheumatoid arthritis," and she had tested positive for hepatitis C.[61]   However, Kumara S. Peddamatham, M.D., P.A., ("Dr. Peddamatham") later discovered that the hepatitis C was in remission, and Plaintiff only required regular monitoring of the disease.[62]

## 4.   The vocational expert's testimony

After reviewing the file and testimony heard at the ALJ

---

[58]   Tr. 167.

[59]   Tr. 168.

[60]   Tr. 220.   The Medical Release/Physician's Statement was filled out for the purpose of helping Plaintiff obtain food stamp, TANF, or Medicaid benefits.

[61]   Tr. 178.

[62]   Tr. 189-190.

11

hearing, the vocational expert ("VE"), Byron Pettingill, opined Plaintiff's prior work as a hairdresser was light skilled work, and her work as a bartender and banquet waitress was light semi-skilled work.  The VE also testified that in making his assessment, he took into account that all of the previous jobs required the constant use of her hands, and she was still able to perform previous work.[63]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner to deny disability benefits is limited to two issues: 1) whether substantial record evidence supports the decision; and 2) whether proper legal standards were used to evaluate the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999); Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

## A.  Substantial Evidence

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000); Brown, 192 F.3d at 496.  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Id.  The Commissioner is given the responsibility of deciding any conflicts in the evidence.  Id. "The findings of the Commissioner of Social Security as to any

---

[63]    Tr.  249.

12

fact, if supported by substantial evidence, shall be conclusive .
. . ."   42 U.S.C. § 405(g).   Only if no credible evidentiary
choices of medical findings exist to support the Commissioner's
decision should the court overturn it.   Johnson v. Bowen, 864 F.2d
340, 343-44 (5th Cir. 1988).   In other words, the court is to defer
to the decision of the Commissioner as much as is possible without
making the court's review meaningless.   Brown, 192 F.3d at 496.

## B.   Legal Standard

The legal standard for determining disability under the Act is
whether the claimant is unable "to engage in any substantial
gainful activity by reason of any medically determinable physical
or mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than twelve months."   42
U.S.C. § 423(d)(1)(A).   To determine whether a claimant is capable
of performing any "substantial gainful activity," the regulations
provide that disability claims should be evaluated according to the
following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial
> gainful activity, will not be found to be disabled no
> matter what the medical findings are; (2) a claimant will
> not be found to be disabled unless he has a "severe
> impairment;" (3) a claimant whose impairment meets or is
> equivalent to an impairment listed in "the listings"[64]
> will be considered disabled without the need to consider
> vocational factors; (4) a claimant who is capable of
> performing work that he has done in the past must be
> found "not disabled;" and (5) if the claimant is unable
> to perform his previous work as a result of his

---

[64]   "The Listings" or "a Listing" refers to impairments listed in
Appendix 1 of the Act regulations.   20 C.F.R. Pt. 404, Subpt. P, App. 1.

13

> impairment, then factors such as his age, education, past
> work experience, and residual functional capacity ("RFC")
> must be considered to determine whether he can do other
> work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. Brown, 192 F.3d at 498; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. Greenspan, 38 F.3d at 236.

### III. Analysis

### A. ALJ's Findings

In the first step of the five-step process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period under consideration.[65] In the second and third steps, the ALJ found that Plaintiff did have RA, osteoarthritis, and hepatitis C, but the impairments, singly or in combination, did not meet or equal in severity the medical criteria for any impairment described in the Listings for presumptive disability.[66]

---

[65]    Tr. 20.

[66]    Tr. 15, 20.

14

In the fourth step, the ALJ ultimately determined that Plaintiff had a light residual functional capacity.[67]   The VE testified that all of Plaintiff's relevant past work was either light skilled or semi-skilled work.[68]   The ALJ determined that because Plaintiff was capable of performing her past relevant work, she was not disabled as defined under the Act at any time through the date of his decision.[69]

In determining Plaintiff's RFC, the ALJ relied on the RFCA of Dr. Breazeale conducted on February 28, 2003.   If the ALJ were solely to look to this assessment, Plaintiff would retain an RFC for medium work.[70]   However, the ALJ stated he must also take into consideration, "in addition to objective medical evidence, the claimant's subjective symptoms, including pain and functional limitations in light of Social Security Ruling 96-7p and 20 C.F.R. § 416.929."[71]   The ALJ found that the testimony given at the hearing was "not wholly credible or supported by the evidence . . . insofar as the claimant allege[d] an inability to perform all work activity including light work."[72]   The ALJ also stated that he had an

---

[67]   Tr. 20.

[68]   Tr. 19.

[69]   Tr. 20.

[70]   Tr. 16.

[71]   Id.

[72]   Tr. 17.

15

opportunity to observe Plaintiff and, "she appeared her age, ably responded to questions, and she did not seem to be in pain or discomfort during the hearing."[73]  In reaching his conclusion, the ALJ recognized, but rejected, Dr. O'Day's RFCA because it was unsupported by objective medical evidence and the record as a whole.[74]

Dr. O'Day identified Plaintiff's primary diagnosis as RA, but also stated that Plaintiff suffered from hepatitis C, osteoporosis, and depression.[75]  The RFCA stated that Plaintiff "could sit for less than two hours and stand and/or walk for less than two hours in an eight-hour day."[76]  The RFCA also found that Plaintiff could lift less than ten pounds occasionally, and Plaintiff would likely be absent from work as a result of impairments or treatment more than four times a month.[77]

In the decision, the ALJ wrote, "the regulations state that if a treating source's opinion on the issue of the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record, the

---

[73]   Tr. 18.

[74]   Tr. 19.

[75]   Tr. 18.

[76]   Id.

[77]   Id.

opinion will be given controlling weight.   20 C.F.R. § 416.927.[78]

As noted by the ALJ, there are six factors an ALJ must take into

account when rejecting or failing to give a treating physician's

opinion controlling weight.[79]

Ultimately, the ALJ rejected Dr. O'Day's treating opinion

because:

> it was unsupported by clinical findings and is
> inconsistent with the evidence considered as a whole.
> Specifically, the claimant's x-rays show only mild
> degenerative changes.   The claimant had only mild
> degenerative narrowing of the PIP and DIP joints.   There
> was no significant osteophyte formation, cortical
> erosion, or cyst formation . . .   The claimant's RA has
> not resulted in significant pain or limitation of motion.
> None of her joints have manifested the presence of any
> deformities.   Moreover, her hepatitis C is not severe
> enough to warrant treatment.   Thus, there is no support
> for the drastic limitations set forth in Dr. O'Day's
> assessment.[80]

## B.  Plaintiff's Arguments

Plaintiff requests judicial review of the ALJ's decision to

deny disability benefits.   Plaintiff contends that the ALJ's

decision is not supported by substantial evidence and that the ALJ

did not follow proper legal procedures.   Specifically, Plaintiff

argues that: 1) the ALJ improperly rejected the opinion of

Plaintiff's treating physician as there was substantial evidence to

---

[78]     Id.

[79]     Id.   These six factors are found in 20 C.F.R. §§ 404.1527 and
416.927.   Though §404.1527 is the section used for Title II cases and §416.927
is the section used for Title XVI cases, they are essentially the same provision
and may be used interchangeably.

[80]     Tr. 19.

support the treating physician's opinion; 2) there was not
substantial evidence to support the ALJ finding that Plaintiff
retained a light RFC; 3) considering the effects of each and every
one of Plaintiff's impairments, there was not substantial evidence
to support the ALJ finding that Plaintiff could perform her
previous work; and 4) a finding of disabled was warranted pursuant
to Medical Vocational Rule 201.10.[81]

    Defendant, on the other hand, contends that the ALJ's decision
was supported by substantial evidence of record and the ALJ
employed proper legal standards in reviewing the evidence.
Defendant, therefore, maintains that the ALJ's decision should
stand.[82]

## 1.    The ALJ followed the proper legal standard when he rejected the treating physician's opinion

    Plaintiff contends that the ALJ committed reversible error by
rejecting and not giving any weight to the treating physician's
opinion as it was "supported by medically acceptable clinical and
laboratory diagnostic techniques and it is not wholly inconsistent
with the opinions of any physician contained in the record."[83]
Defendant argues the ALJ was correct in rejecting the treating
physician opinion because the ALJ is free to do so when evidence

---

[81]     Motion for Summary Judgment and Supporting Brief, Docket Entry No.
9, p. 3.

[82]     Brief in response to Plaintiff's Motion for summary Judgment and in
support of Cross motion for Summary Judgment, Docket Entry No. 11.

[83]     Motion for Summary Judgment and Supporting Brief, Docket Entry No.
9, p. 14.

supports a contrary conclusion.

The ALJ used the proper legal standard in his determination to reject the treating physician's opinion and did not err in rejecting Plaintiff's treating physician's opinion. The ALJ was only required to show good cause for rejecting the treating physician's opinion and his decision is supported by substantial evidence.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatment and responses, should be accorded great weight in determining disability." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). Generally, the opinions of a specialist are accorded greater weight than those of a non-specialist, and a treating physician's opinion will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with . . . other substantial evidence." Id. Though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, a treating physician's opinions are not conclusive and the ALJ has the "sole responsibility" for determining a claimant's disability status. Id.

"Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ

perform[ed] a detailed analysis of the treating physician's views
under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."
Newton, 209 F.3d at 453.

> A finding that a treating source's medical opinion is not
> well supported by medically acceptable clinical and
> laboratory diagnostic techniques or is inconsistent with
> the other substantial evidence in the case record means
> only that the opinion is not entitled to "controlling
> weight," not that the opinion should be rejected.
> Treating source medical opinions are still entitled to
> deference and must be weighed using all of the factors
> provided in 20 C.F.R. §§ 404.1527 and 416.927.

Newton, 209 F.3d at 456.  However, An ALJ is free to reject "any
physician['s]" opinion when evidence supports a contrary
conclusion.  Newton, 209 F.3d at 455.

    With respect to RFCA and Medical Source Statements,
"adjudicators must weigh medical source statements under the rules
set out in 20 C.F.R. § 404.1527, . . . providing appropriate
explanations for accepting or rejecting such opinions."  61 FR
34471, 34474.  Good cause permits an ALJ to discount the weight or
reject a treating physician's opinion, and in circumstances similar
to Newton, good cause must be demonstrated in writing "via
consideration of each of the factors" in 20 C.F.R. § 416.927(d).
Newton, 209 F.3d at 455-456; Alejandro v. Barnhart, 291 F. Supp. 2d
497, 508 (S.D. Tex. 2003).

    In Alejandro, the plaintiff argued that the ALJ erred by
holding that the opinions of his treating psychiatrist were "not
entitled to any weight" due to the fact that they were

"inconsistent with the remainder of the record." Alejandro, 291 F. Supp. 2d at 506.    The plaintiff also argued that the ALJ must account for the weight given to a treating physician's opinion using the factors set forth in the regulations, but the ALJ failed to do so. Id.  The court found that the ALJ "did not explicitly and specifically reference the factors enumerated in 20 C.F.R. §§ 404.1527(d), 416.927(d) . . . '[though] such explicit consideration would certainly be the better practice.'" Id. at 508.   However, such an omission does not constitute error under Newton because Newton's holding "is limited to the specific factual context addressed therein." Id. at 509, 510.    In Newton, the "ALJ summarily reject[ed] the opinions of [the plaintiff's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." Id. at 509.

As discussed in Alejandro, two cases subsequent to Newton reinforce this understanding.  In the first case, the Fifth Circuit reversed and remanded a district court's affirmance of an ALJ's denial of benefits on the basis of Newton.  Myers v. Apfel, 238 F.3d 617 (5th Cir. 2001)(per curiam).   The Myers court pointed out they were reversing and remanding because the court was likewise faced with "a case where the ALJ summarily rejected the opinions of [the plaintiff's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." Id. at 621.   The other relevant Fifth Circuit case

21

characterized <u>Newton</u> as merely "requiring, in the absence of
competing first-hand medical evidence, that the ALJ consider each
of the § 404.1527(d) factors in evaluating the medical opinion of
a treating physician." <u>Frank v. Barnhart</u>, 326 F.3d 618, 620 (5th
Cir. 2003)(per curiam).

Further, <u>Newton</u> cited two other cases in its opinion which
the Fifth Circuit believed were factually distinguishable. Of
importance to the case at hand is <u>Spellman v. Shalala</u>, 1 F.3d 357
(5th Cir. 1993). In <u>Spellman</u>, the Fifth Circuit let stand an
administrative ruling that disregarded a treating physician's
opinion because it "was inconsistent with the other substantial
evidence of record." <u>Spellman</u>, 1 F.3d at 365.

The instant case is similar to <u>Alejandro</u> and <u>Spellman</u> and
distinguishable from <u>Newton</u>. Here, the ALJ did not "summarily
reject" the treating physician's opinion and rely solely on the
testimony of a "non-specialty medical expert who had not examined
the claimant." <u>Alejandro</u>, 291 F. Supp. 2d at 509. Rather, the ALJ
relied on competing first-hand medical evidence, and showed good
cause for his rejection of the treating physician's opinion.

In determining to reject the treating physician's opinion, the
ALJ relied on the opinions of two other physicians, Dr. Breazeale,

(a non-examining source),[84] and Dr. Jadav, (a non-treating source).[85] Both of their opinions were given within weeks of each other in February 2003, and are consistent with one another. Dr. Breazeale's RFCA determined that Plaintiff could: 1) occasionally lift and/or carry fifty pounds; 2) frequently lift and/or carry twenty five pounds; 3) stand and/or walk about six hours in an eight-hour workday; 4) sit for a total of six hours in an eight-hour workday; and 5) push and pull without limitations.[86] Dr. Jadav determined that Plaintiff: 1) had good grip strength and range of motion in her back; 2) other than some pain in her knees, all her other joints had a good range of motion; 3) could bend and get up from a sixty degree squat; 4) could button her shirts and 5) seemed alert and actively got up and down from her chair during the examination.[87] Dr. Breazeale's opinion was consistent with that of Dr. Jadav. Together, these two medical opinions more than satisfy the requirements of Newton.

Even had the ALJ relied solely on the opinion of Dr.

---

[84]    Non-examining sources are those whose assessments are premised solely on a review of medical records.   20 C.F.R. § 416.902.   State agency medical consultants consulted by the ALJ fall into this category.   Id.

[85]    Non-treating sources are those who have examined the claimant, but who do not have "an ongoing treatment relationship" with same.   20 C.F.R. § 416.902.  This "term includes an acceptable medical source who is a consultative examiner . . . when the consultative examiner is not [a claimant's] treating source.   Id.

[86]    Tr. 150.

[87]    Tr. 142-148.

Breazeale, a non-examining medical expert, it would still not fall within the ambit of <u>Newton</u> because the ALJ also relied on objective first-hand medical evidence that was substantial and inconsistent with the opinion of Plaintiff's treating physician.   In the ALJ decision, after the recitation of the 20 C.F.R. § 416.927 factors, the ALJ stated that the treating physician's opinion was rejected because "it [was] unsupported by objective clinical findings and is inconsistent with the evidence considered as a whole."[88]   The ALJ then "specifically" listed the reasons that the treating physician opinion is not supported by the evidence.[89]   The first three reasons given are all based on the x-rays of Plaintiff's knees and the MRI of her right hand and wrist.[90]   The x-rays and MRI showed:  1) mild degenerative changes; 2) mild degenerative narrowing of the PIP and DIP joints; and 3) no significant osteophyte formation, cortical erosions, or cyst formation.[91]   The mild degree of Plaintiff's condition belies her treating physician's placement of "drastic limitations" on her ability to work.[92]   This is similar to <u>Spellman</u> and <u>Alejandro</u> where there was first-hand competing medical evidence which did not support the treating physician's opinion.

---

[88]    Tr. 19.

[89]    <u>Id.</u>

[90]    <u>Id.</u>

[91]    <u>Id.</u>

[92]    <u>Id.</u>

For all the reasons discussed above, this case does not fall into Newton's requirements, and the ALJ could appropriately discount the weight of or reject the treating physician's opinion after a showing of good cause.  As discussed in Newton, good cause may be a showing that the treating physician's opinion is unsupported by the evidence.  The ALJ reasoned that the "drastic limitations set forth" by Plaintiff's treating physician was not supported by the evidence considered as a whole.[93]  As stated above, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion," and therefore, the court finds the ALJ did not err.  Newton, 209 F.3d at 455.

## 2.   Substantial evidence supports the ALJ's finding that Plaintiff retained a light RFC

Plaintiff contends that the ALJ's finding of a light RFC is not supported by substantial evidence because:   1) the ALJ improperly rejected the opinion of the treating physician; 2) the RFCA of the agency medical expert, Dr. Breazeale, was exaggerated; 3) the medical evidence relied on was collected during a time period when Plaintiff was still attempting to diagnose her condition; and 4) the ALJ improperly dismissed portions of Dr. Jadav's opinion which were beneficial to Plaintiff.[94]   Not

---

[93]   Id.

[94]   Motion for Summary Judgment and Supporting Brief, Docket Entry No. 9, pp. 10-14.

surprisingly, Defendant contends just the opposite.[95]

The ALJ has the "sole responsibility" for determining a claimant's disability status and is free to reject the opinion of "any physician" when the evidence supports a contrary conclusion. Newton, 209 F.3d at 455. It is the duty of the commissioner to weigh and resolve material conflicts in the evidence, and decide the case. Johnson, 864 F.2d at 340, 347. "If the ALJ's decision is supported by substantial evidence and is consistent with proper legal standards, her decision must be affirmed, even if the evidence could support a contrary conclusion." Greenspan, 38 F.3d at 236.

"Light Work" involves lifting twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). Light work also involves walking or standing, off and on, for six hours during an eight-hour workday. Id. When sitting, a good deal of pushing and pulling is required as well. Id. Medium work involves lifting fifty pounds at a time with frequent lifting or carrying objects weighing up to twenty-five pounds. 20 C.F.R. § 416.967(c).

Plaintiff's first argument is that because the ALJ found Plaintiff retained a light RFC, and not a medium RFC as determined by Dr. Breazeale, this was presumable evidence that the ALJ also

---

[95]     Brief in response to Plaintiff's Motion for summary Judgment and in support of Cross motion for Summary Judgment, Docket Entry No. 11, pp. 4-10.

considered Dr. Breazeale's assessment to be exaggerated.[96]   This argument has some merit, but is misplaced.   The ALJ determination of a light RFC is not only evidence that the ALJ determined the RFCA of Dr. Breazeale to be exaggerated, but more importantly, it is evidence that the ALJ followed the proper legal standard and considered evidence from the rest of the record in making his RFC determination.   It does not support Plaintiff's contention that the ALJ's decision was not based on substantial evidence.

Plaintiff next argues that the ALJ erred in relying on the x-rays and the MRI of Plaintiff's knees and right hand, respectively, because they were taken during a time period when doctors were diagnosing Plaintiff's condition.   This argument is without merit. RA was given as Plaintiff's diagnosis, for the first time, in a progress note dated September 18, 2002, by her treating clinic.[97] Plaintiff testified at the ALJ hearing that she had been diagnosed with RA by her treating physician in August 2002.[98]   The x-rays and MRI relied upon by the ALJ, and disputed by Plaintiff, were taken in August and September 2002 (when she was first diagnosed with RA) and February 2003 (five months after her initial diagnosis).[99]

---

[96]    Motion for Summary Judgment and Supporting Brief, Docket Entry No. 9, p. 12.

[97]    Tr. 112.

[98]    Tr. 237-238.

[99]    Motion for Summary Judgment and Supporting Brief, Docket Entry No. 9, p. 12.

Further, even though the x-rays and the MRI date back to the time Plaintiff claims she was undergoing diagnosis, she claimed an onset date of July 1, 2002.[100]   Thus, the x-rays and MRI were actually timely, relevant evidence of her condition during her claimed period of disability.  The medical evidence relied on was objective evidence of the progression of Plaintiff's disease, which allegedly began in July 2002.  Therefore, the evidence supports the ALJ's decision.

Plaintiff argues next that the ALJ had improperly disregarded Dr. Jadav's statement that Plaintiff could only lift and carry objects weighing up to two pounds.[101]  This argument is also without merit.  As Defendant correctly points out, Dr. Jadav's statement reflected Plaintiff's self-report of her abilities, and not his own impression.[102]   In that self-report, Plaintiff stated she could hardly lift more than two pounds.  However, she also stated she could:  1) sit for three to four hours; 2) stand for two hours; 3) move around for three to four hours; and 4) make a good grip.[103] She also denied having problems with holding things, and she did

---

[100]    Tr. 46, 47.

[101]    Motion for Summary Judgment and Supporting Brief, Docket Entry No. 9, p. 13.

[102]    Brief in response to Plaintiff's Motion for summary Judgment and in support of Cross motion for Summary Judgment, Docket entry No. 11, p. 8.

[103]    Tr. 142-148.

not need any assistance device for walking.[104]  Light work involves walking or standing, off and on, for six hours during an eight-hour workday and lifting twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. § 416.967(b).  Other than the lifting requirement, by Plaintiff's own admission, she is capable of light work.  Moreover, to the extent the record evidence conflicted in this regard, it is the ALJ's role to "weigh the evidence, resolve material conflicts, and decide the case."  <u>Johnson</u>, 864 F.2d at 347.

The ALJ's decision is supported by substantial evidence.  Not only are the Plaintiff's arguments without merit or misplaced, but they support the ALJ finding.  They show that the ALJ made an informed decision and did not blindly rely on the RFCA of its own agency medical expert, that the medical evidence relied on was taken during a time period when Plaintiff had already been diagnosed with RA, and that Plaintiff's own testimony suggested she was capable of light work.  For all the reasons above, there is substantial evidence in the record to support the ALJ's finding that Plaintiff retained a light RFC.

3.   <u>ALJ properly found Plaintiff retained the ability to perform her past relevant work</u>

Plaintiff argues the ALJ erred in determining she could perform her past relevant work because the ALJ did not take into

---

[104]   <u>Id.</u>

consideration all of Plaintiff's impairments in making his disability determination.[105] Primarily, Plaintiff opines that her "true RFC" should not include good use of her hands.[106] This argument is without merit. Defendant contends that evidence indicates that Plaintiff had a normal range of motion and strength in her wrists and hands, the pain was occasional, limited to her right hand, and was responsive to treatment.[107]

"Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence." Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." Wren, 925 F.2d at 128. "The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence." Jones v. Heckler, 702 F.2d 616, 622 (5th Cir. 1986). "Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). "Impairments which can be reasonably remedied or

---

[105] Motion for Summary Judgment and Supporting Brief, Docket Entry No. 9, p. 17.

[106] Id.

[107] Brief in response to Plaintiff's Motion for summary Judgment and in support of Cross motion for Summary Judgment, Docket entry No. 11, pp. 9, 10.

controlled by treatment cannot support a finding of disability."
Johnson, 864 F.2d at 348.  "Subjective complaints of pain must also
be corroborated by objective medical evidence."     Houston v.
Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).

Also, the ALJ must consider in addition to the objective
medical evidence of record:

> seven factors when assessing how symptoms limit the
> plaintiff's ability to perform basic work activities: 1)
> the individual's daily activities; 2) the location,
> duration, frequency, and intensity of the individuals'
> pain or other symptoms; 3) factors that precipitate and
> aggravate the symptoms; 4) the type, dosage,
> effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other
> symptoms; 5) treatment, other than medication, the
> individual receives or has received for relief of pain or
> other symptoms; 6) any measures other than treatment the
> individual uses or has used to relieve pain or other
> symptoms; and 7) any other factors concerning the
> individual's functional limitations and restrictions due
> to pain or other symptoms.

20 C.F.R. 416.929(c)(3).

In the instant case, the ALJ applied these factors and
properly evaluated plaintiff's complaints of pain and expressly
rejected the claim that Plaintiff's pain rendered her totally
disabled.[108]

According to the medical record and Plaintiff's own
admissions, her pain was not constant, unremitting, and wholly
unresponsive to therapeutic treatment.  See Falco, 27 F.3d at 163.

---

[108]    Tr. 16-17.  In the decision, the ALJ lists the 96-7p factors required
in assessing how symptoms limit the plaintiff's ability to perform basic work
activities.

31

Plaintiff testified at the ALJ hearing that she had good days and bad days, and on a good day she can "stretch [taking medication for] six to eight hours.  On a bad [day], sometimes only three to four."[109]  Plaintiff also testified that the pain was not always in her knees or in her wrist, but moved around her body.[110]  A progress note dated September 18, 2002, indicated that the medication Darvocet helped Plaintiff's pain.[111]  In January 2003, a progress note stated that "Prednisone miraculously relieved [Plaintiff's] pain."[112]  In February 2003, Plaintiff reported to Dr. Jadav that she responded very well to steroids, noting that she was on steroids at the time of the examination and she felt good.[113]  In July 2003, Plaintiff reported that her pain was almost "totally resolved [with] 20 mg. of Prednisone but flared with a lesser dose."[114]  Also, at the ALJ hearing, when asked about the condition of her knees, Plaintiff responded that she had been given a Cortisone shot on April 22, 2003, which had reduced the swelling in her knees.[115]  As evidenced from the record and Plaintiff's

---

[109]    Tr. 241-244.

[110]    Tr. 240.

[111]    Tr. 113.

[112]    Tr. 100.

[113]    Tr. 143.

[114]    Tr. 182.

[115]    Tr. 241.

testimony, her pain was not constant or unremitting, and was responsive to therapeutic treatment.

The objective medical evidence contradicts and does not support Plaintiff's subjective testimony of her physical or functional limitations. For example, the September and August 2002 x-rays of her right and left knees, and the February 2003 MRI of her right hand showed only mild degenerative changes and moderate joint effusion, mild degenerative joint disease, mild inflammatory osteoarthritis of the right hand and wrist and mild degenerative narrowing of the PIP and DIP joints.[116]  Dr. Jadav's examination revealed that the range of motion of Plaintiff's lumbar spine was not restricted, she was able to bend and touch her fingertips to the floor, her sensory examination was intact, and she could stand from a sixty degree squat.[117]  Further, the VE testified that all of Plaintiff's past relevant work was either light skilled or semi-skilled work and opined that Plaintiff was capable of performing her past relevant work.[118]  The VE also testified that he considered the fact that all her previous jobs required the constant use of hands.[119]

After a review of the record, the ALJ did not err in deciding

---

[116]    Tr. 17.

[117]    Id.

[118]    Tr. 249.

[119]    Tr. 249-250.

Plaintiff was able to perform her past relevant work, and did not err in limiting the use of her hands, especially in light of the fact that the ALJ's determination is given considerable deference, and is supported by substantial evidence.

4.   Plaintiff's remaining arguments are moot

Plaintiff further argues in her brief that there was substantial evidence in the record to support a finding that she retained a sedentary RFC.[120]  However, because the court finds the ALJ's determination that Plaintiff has a light RFC to be appropriate, a finding of sedentary is precluded.

Plaintiff's remaining argument that a finding of disability is warranted under Medical-Vocational Rule 201.10 is also moot. Plaintiff argues that when a claimant is unable to perform her past relevant work or adjust to other work a finding of disability is appropriate under 20 C.F.R. § 416.920(f).[121]  Because the ALJ found Plaintiff was not disabled and was capable of performing her past relevant work, this argument is also precluded.

## IV.   CONCLUSION

Based on the foregoing, the court **DENIES** Plaintiff's summary judgment motion and **GRANTS** Defendant's motion for summary judgment motion.

---

[120]   Motion for Summary Judgment and Supporting Brief, Docket Entry No. 9, p. 15.

[121]   Motion for Summary Judgment and Supporting Brief, Docket Entry No. 9, p. 18.

**SIGNED** in Houston, Texas, this 20th day of June, 2006.

_____
NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE